Thank you, Your Honor. May it please the Court, Paul Hughes for the appellant Randall Haler. As the Court is aware, this case is about a bankruptcy discharge circumstance. The question is whether or not Mr. Haler may discharge the state court judgment that was rendered against him, or whether it's exempt from discharge pursuant to Section 523A2, the fraud exemption to the discharge. Now, the key issue, the sole issue at this point in this case is whether or not the fraudulent statements at issue are statements respecting financial condition. If they are statements respecting financial condition, then this case is governed by Section 523A2B. Section 523A2B, though, requires that the statements be made in writing. Because these statements were not made in writing, Section 523A2B can't apply. It can't exempt these debts from discharge. If, however, the case is governed by Section 523A2A, then oral statements do apply in that context, and there would be an exemption from discharge. For two separate reasons, we submit that these are statements respecting financial condition. The first is that in accord with this Court's decision in Bandai, these are statements that represent the overall financial picture of the debtor. Our second alternative argument is if that is wrong, we respectfully submit that the Bandai decision is wrongfully decided and that the Court, en banc, should reconsider the Bandai case. So turning to the first issue as to the statement respecting financial condition within the meaning of Bandai, this Court in Bandai held that statements are statements respecting financial condition if they, quote, purport to present a picture of the debtor's overall financial health. Or as the Court said, these are statements that reflect a debtor's ability to repay debt. The two statements here that are at issue is Mr. Haler's statements that the company McKinney Aerospace was, in quote, very fine legally financial shape and also had, quote, plenty of cash to operate the business. These are necessarily statements that purport to describe the overall financial condition of the company. In fact, this was the very theory of fraud that Boyington has pressed in the State court and pressed in the bankruptcy court in order to obtain their fraud judgment and also in order to trigger the fraud exemptions to discharge entirely. So for example, at the record page 410, the State court identified these statements as being material and there being proper reliance on them precisely because they went to whether or not the company was, quote, unquote, financially sound. The bankruptcy court at record pages 37, 38, 39, 42 found that these statements were relevant because they went to the company's financial stability. That's the key theory that Boyington has pressed throughout this case is that these statements go to either the financial soundness or the financial stability of McKinney Aerospace. It's our submission that financial soundness and financial stability are synonyms. They're the exact same thing as revealing the company's overall financial health or ability to repay debt. And so at the point that that's their theory in this case, we think this falls squarely within the meaning of Bandai. Now in their opposition brief, Boyington tries to distance itself from these statements, suggesting that there's confusion as to what these statements mean. They say one statement is unclear, it's precise meaning. Boyington has stopped from making this argument, though, because the very theory of fraud that they have asserted in State court and in bankruptcy court was that they relied on these statements, that they were material, the statements were made, they relied on them, and that they were false statements. So having won their fraud claim on the back of these statements, they can't turn around now and try to suggest that these statements are devoid of meaning or that they can walk away from them. They're central to their claim. Having made them central to their claim, it is the natural consequence is that these are statements about financial condition of the company itself. I wonder if, I mean, Bandai makes this difference between statements about a particular asset and, as you say, statements about overall financial condition. I mean, these don't seem to be statements about a particular asset, which helps you. But I wonder if there's just a third category of they're just these very vague, general comments that don't fit into either a statement about a particular asset or a statement about overall financial condition. Your Honor, if they, though, are that vague and sort of don't have that kind of meaning, I think that the plaintiff here would have a real problem, because they wouldn't be able to show that they relied on them or that the statements were material. Recall that their key theory is that these statements were material to their decision to provide over $300,000 to McKinney Aerospace, and that they specifically relied on these statements in order to do so. If their contention is that they're in some nebulous category of vague statements that don't say anything about McKinney, either a specific asset or its overall financial condition, I don't see how they can then turn around and say that they, in fact, relied on these statements in handing over checks for more than $300,000. The reality is now that they have won their case on the fraud aspect of it, saying that they relied on these statements, I think it's clear that they have to say something significant about the company. That's their theory. They say things that are very significant about the company, and what that is, is the financial soundness or stability of the company, which, as Your Honor pointed out, I think is within the heartland of where Bandai looks to the overall financial health of the entity. So I think this is quite squarely within what the Bandai court had anticipated. And if there's any kind of oral statement that would go to financial condition within the meaning of what the court held in Bandai, I think this is precisely the case. Because, again, as all the courts that have looked at this have said, Section 523a2b indicates that because there's a written requirement for when there are statements respecting financial condition, there has to be a category of oral statements that respect financial condition. Whatever statements respecting financial condition means, there must be some category of oral ones that don't trigger an exemption from discharge. This seems to be the clear example of an oral statement that goes to the overall financial health of the company that meets that clear definition. Under Bandai, what would, if a statement, and maybe this is one that just speaks about a firm's overall financial assets, so not a particular asset, but let's say they said, oh, we have $5 million in assets, but no discussions about liability, so you don't know the overall financial condition. Where would that fall under Bandai? Yes, Your Honor. Not this case, but to answer the question, I think that's a little unclear. Because Bandai does say at some points that bank balances can be a condition of an overall financial statement. But, as Your Honor notes, that doesn't reveal its statement of overall financial condition, because you might have a $5 million bank account, but $10 million of liabilities. I think it's a little unclear where that fits, Your Honor, respectively, under Bandai. Our ultimate submission is that that is a statement respecting financial condition for all of the reasons. Plenty of cash is largely like that, just an asset side. You can have plenty of cash and have liabilities of loans that far exceed whatever that plenty of cash is. The plenty of cash, though, was specifically saying plenty of cash to operate the business. And to operate the business, that means what are the cash flow needs of the business? And are you a business that has sufficient cash reserves to be able to operate? It turned out their allegation is that he had said this, and it was not true, because there were more debts that required them to use the cash that came in for this particular aircraft to satisfy other liabilities. But that goes to the financial circumstances of the company as a whole. It's not one discrete particular asset. In Your Honor's suggestion of a statement that just says we have $5 million in a bank account, but it doesn't go further and qualify that in saying, and $5 million is plenty of cash to operate our business. I think it's that second qualification is that what happens here that ties the statement about the asset to the nature of the business enterprise in its entirety that ensures that this really is a statement that goes to the entirety of the business. And again, Your Honor, I think it's critical to look at these statements have to be taken together. This is a single theory of fraud. The theory of fraud is that these individuals, the company, Boyington, was induced to provide more than $300,000 to McKinney for the aircraft repairs, and that it was induced based on these statements. There's no suggestion that one would dissect these statements line by line to think that there were separate frauds. That's not how this case proceeded. It proceeded as one single fraud. That's how these cases always proceed. And so in making the judgment of were these statements respecting financial condition or were these statements respecting something else, you look to them as a whole. And here, where the first statement issued very fine legally financial shape, I think is plainly the kind of statement that goes to the company as a whole. As we also pointed out, in the briefs that Boyington filed in the lower court, so Record on Appeal, page 153, and that's their summary judgment brief, and then their reply on summary judgment, page 549 in the appendix, they speak directly to saying that these are statements about a financial condition, and that they note that that's the theory of the case that they have presented. So at Record, page 153, when describing the fraud verdict that they won in the district court, they say, quote, ''Hayler failed to disclose to Boyington the true financial condition of McKinney Aerospace for the purposes of inducing Boyington to make the contracts with and to tender the deposits to McKinney Aerospace.'' So before this focus on statement respecting financial condition between 523A2A and A2B arose, Boyington was very happy to acknowledge that the purpose, the relevance of the statements was that it was a theory about the financial condition of McKinney Aerospace and not some other less nebulous or less specific kind of representation or allegation. We also pointed out that the bankruptcy courts in this circuit have had a more expansive view under Bandai, particularly the Zemeck case, which held that a representation of, I believe, $1.6 million of funds to operate a dairy was sufficient. And I think Zemeck is just instructive of how the courts have understood that Bandai has somewhat of a broader focus, that the statements don't have to be in a particularly mechanical form of a balance sheet in order to trigger the protections under Section 523A2B. Then, of course, as the Court is aware, our alternative argument is if this is not a statement respecting financial condition within the meaning of Bandai, we respectfully point it to the Eleventh Circuit's recent decision in the Appling case, which takes a more expansive view of what that statutory phrase means. I'll just note that since the briefs were filed, the United States recently filed a broader interpretation of what the relevant statutory text means, and so the United States has endorsed that theory as being a proper interpretation of the statutory text, as well as the statutory lineage of the earlier cases that had looked at these relevant statutory terms prior to the most recent enactment in 1978. The government also agreed in terms of policy that there's a—Congress had created a policy to have a broader interpretation of this phrase in order to encourage that at the time that these sorts of debts are made, that the creditors obtain written statements, so that way there's no later confusion as to what financial condition or statements about financial condition are made, which again supports a broadening interpretation. And then finally, as the government— Look, this morning, the—so as you said, the Federal Government is recommending the Supreme Court hear the case and resolve the split, and it's said the Supreme Court's going to decide I think the first week in January whether to take that Eleventh Circuit case or follow the government's recommendation. What should we do if the Supreme Court decides to take that case? Your Honor, if the Court takes that case, I think the most appropriate course likely to be to hold this decision pending what the Supreme Court does because I think the Supreme Court's guidance in Appling would be quite instructive to what the—if the Court does change the law or clarifies the law in Section 523A2A and A2B, that this Court may wish to wait that guidance. Now, I don't think it's a foregone conclusion that the Supreme Court's going to take that case. As Your Honor noted, I think we do anticipate that we'll have a decision. It'll go to conference most likely the first week of January. There's often the relist process now, so it might be until mid-January. I guess around January 15th or thereabouts, we'll have an indication as to whether the Court's going to take that case. But if there is a grant of certiorari at that point, then I think waiting to see what the Supreme Court does may be advisable. But if we were to agree with your first argument, then we don't—would we need to wait for that decision? No, Your Honor. To be clear, if you agree with our first arguments, then I think under any reading of Section 523A2A and A2B, we would prevail in this case, so there would be no need to wait in that scenario. That's right, yes, Your Honor. I'll reserve the balance of my time. Thank you, sir. Mr. Haynes? Good morning, Your Honor. Michael Haynes on behalf of Boynton Capital Group. I can't disagree more with much of what he said. The sole issue before this Court is whether the lower courts properly applied the Bandy Standard to the facts of this case. And the issue is not whether the Bandy Standard should be reversed or modified. Put another way, the two statements of very fine legally financial shape and access to cash concern the financial condition of McKinney Aerospace and the insider of Appley and operate to exclude the misrepresentations from the non-dischargeability provision. In order to determine whether or not these statements deal with the financial condition, Bandy addresses it by defining what constitutes a financial condition in commercial usage. And that's a very important distinction to make. The Court, and I think it is, it hinges on this entire view of this. Otherwise, if you focus on the word respecting, as suggested by the appellant, I think you get off base and I think you end up with subjective statements that are determined to be whether or not they're related in any way to a financial condition. So I think as the Court addresses in Bandy, the financial condition is defined as the overall condition of the company financially by a comparison of the value of property and income versus debts and liabilities. A statement that he has plenty of cash or that they are very fine legally financial says absolutely nothing about the overall financial condition of the company, its income compared to debts or the ability to repay debt. I think that it's important because I think this is precisely the type of case that Bandy is addressing in their definition of what constitutes a financial condition. To say that a company has a very fine legally financial shape or to even say that it has plenty of cash says absolutely nothing about the overall financial condition of the company. It is, indeed, a very vague and so overly broad that I think it actually encourages the fraudulent type of statements that were made in this case. These are precisely the things that I think that the Bandy Court addresses by defining what constitutes financial condition as opposed to just something that's related or respecting a financial condition. What about his argument, then, that if it's so vague and doesn't really say anything, what grounds did you have to reasonably rely on it? Well, I think the importance there becomes the context in which it was used, Your Honor. Just as in this case and Appellant's brief, they talk about a repayment of debt. It's important in this case, I think, that the fraud in this case was simply a part of a scheme to separate the victim of the fraud from his money. This was not a repayment of debt. There was no loan, unlike all these other cases where there's a promissory note or a preexisting debt. This is a situation where a business goes to get repairs made on a jet airplane, and over the course, as the testimony was, over several conversations, they're establishing whether or not they can entrust their money with this company to buy parts and to do the repairs. There was no loan. There was never any repayment. There was never any anticipation that this money was going to be given to the appellant, to Haler and to McKinney Aerospace, and then repaid at some other time. It was to be given in trust so that they could buy parts and perform the labor. As soon as they gave them the money, they found out they didn't buy the parts, and they also found out then one day they gave a change order, $60,000, and that very day found out they hadn't bought parts, asked for their check back, and were told it had already been spent. So the point is that this was not a loan. This was not a repayment. They weren't looking at the overall financial condition of the company. They were talking about doing repairs. And this was never going to be Haler's money or McKinney Aerospace's money to spend as they saw fit. So in that context, I think the idea, the notion that what that overall financial condition has to do with this decision has very little because it was our money. When we asked to have the money returned, we didn't ask for it to be repaid. This was not a, you know, how is your company doing so when we give you this money we'll be able to get a loan back. That's not it at all. So I think, you know, what the problem becomes is when you look at the overall impact of how this affects commerce, if you have, this is not a loan, this is not a bank, this is a company doing business and entrusts their money with somebody. On a more simple and everyday situation, you have a homeowner that's building a home. He has a contractor that says we've got change orders and I need some money and pay me this money. And let's say that in the course of that conversation the home builder says, oh, I've got good credit, I've got good credit with my bank, I build a lot of houses. Okay. So he gives them the change order, he takes his money, and he uses it on something else and doesn't do the work. In this case, we're going to, if you accept their argument, the appellant's argument, they get a discharge for that. Clearly a fraudulent act. Clearly a situation where it was material. It had nothing to do with the overall definition of financial condition and bandy. But if you basically do away with the bandy and say any comment, any subjective comment whatsoever regarding financial condition provides safe harbor to a fraudulent actor. And I don't think that's the intention. This is not a situation. But not if it's in writing. It just says it should be in writing. Well, not if it's in writing, that's right. And so it actually, I think as one of those 11th Circuit opinions says, it would actually be broader in excluding more fraud from discharge because if it's in, as long as it's in writing, which is the preference. If it makes it in writing, but in the same circumstance, the everyday things that go on, just like in my example with the home builder, you're going to have somebody who's billing a home. They're not going to have lawyers. They don't have credit analysts. They're not going to have, they're not going to stop everything and say, okay, now I need to get a financial statement because I can't trust you. I can't believe that what you say that you have good credit and all that is good. So I think that it, that really the genius of Bandy is that it focuses the more information that's important to your decision about the overall condition, in meaning if you make a loan like that that you're going to properly document, that's when I think the Bandy decision says that's when you need more information and you need to have the comparison of income and property versus debt and expenses and liabilities. When you're looking at that type of, say, a loan repayment, then I think that's when it says that is financial condition and that's when it's going to need to be in writing. It's the, in this case where somebody just says, oh, we're very fine legally shaped or we have plenty of cash. That's a comment on a single asset. Or it's a comment that doesn't really mean anything. I think that's clearly the situation where it's absolutely within the definition of financial condition that the court is going to say that doesn't exclude you from the discharge. And again, I think in the Appling case there was a discussion about what the U.S. had said in their amicus brief and this is largely what the Appley's reply brief said as well, where they talk about this sort of dual standard. It's when financial information on a single asset in Appling was tendered as evidence of the debtor's ability to repay. There's no repayment in this case. And I think that the two of those joined together, which is what the appellant asserts in their reply brief here as well, that we have, the reply brief says that in sum, Taylor's representations mattered to Boynton precisely because they describe McKinney's overall financial health and consequent ability to repay. That presumes facts that simply didn't exist in the reasoning of the lower courts, and the lower courts should not be reversed for applying a standard that doesn't exist in this circuit. I think they properly applied the Bandy standard. So if very fine financial shape isn't a statement of overall financial condition, what would be an oral statement? Because, I mean, you can't orally give a balance sheet or a, you know, that's not feasible. So what orally would be a statement? Well, I think if you take as a financial condition the comparison of income and property versus debts and liabilities, I think it would be easy to say we have plenty of cash, but we do have a lot of liabilities. You know, you may get to the point where if you, as long as you don't just make a single comment of, oh, we're in fine shape, and if you say I have plenty of cash, I don't know whether that means you have investors that are willing to give you money. I don't know whether that means you have a line of credit. I don't know whether that means if you're doing parts for an airplane, okay, and you get money up front from me, I assume you get money up front from everybody you're doing repairs for, okay? So I think, I just think that rather than a single comment that doesn't really say anything about financial condition, as defined by Bandy. What about our balance sheet is in great shape? Well, again, I mean, that becomes a subjective question about what great shape means to that person who's saying it. If he's saying that. There's a statement about, I mean, that seems to be more a problem of how specific it is than whether it's a statement about overall financial condition. Well, I think the problem, and I understand, I've really wrestled with this whole notion of the importance of what financial condition means. It's a slippery slope, it seems to me, that if you start saying anything respecting financial condition, you know, we've got a great balance sheet, okay? If you say that that is enough to allow, and I say that in the context like I did here, that that statement is used to gain the confidence of the victim of the fraud. And the person who knows it knows that as long as I don't put it in writing, I'm good to go. I can file bankruptcy and get a discharge. I don't think that's what the Bankruptcy Code anticipates. I don't think that's what Congress thinks of when they talk about giving a fresh start to an honest but unfortunate debtor. I think we've got that countervailing balance. So the fact that you make sort of that subjective overall, yeah, I've got a good balance sheet, if it's not in proper context and in a situation like we have here where their balance sheet doesn't really matter to us, their availability or fine legal shape doesn't matter to us because we're simply giving them money in trust to use on our airplane, and then they don't do it, that simple comment of, well, we've got a good balance sheet, gives them a discharge. And I don't think that would be a problem, it seems to me, overall. Yeah. It just seems, I mean, understandable you're thinking about it from the perspective of your client who received an oral communication. But if you think about it from the standpoint of, let's say there's someone who had a, in writing, our balance sheet is in great shape. If that's not a statement respecting financial condition, then that person is not excused from discharge based on the fraud. So it's not, as the Eleventh Circuit opinion says, you have to consider that this is really a preference for having things in writing. And obviously I think that is a preference, but, you know, in the real world, I don't think people write all these things down. I don't think you're going to stop and say, let me bring my lawyer in here when I'm trying to get something done, and I'm going to make sure I get this all in writing. And then you're put to the test of, you know, if it's in writing, then we have a higher standard of reliance. Then we have to say, well, when you got this financial statement, what did you do to look beyond these numbers? And did you ask them, well, tell me about all your liabilities and tell me about all these issues? Then, you know, I think it's just a huge shifting of the burden from the, over to the victim of the fraud to have to, you know, rise to a much higher level than I think should be required, and certainly in falling bandy. I just think that's, it just doesn't, I mean, I get that it's a tough issue, but it is sort of a balancing. And I think the context of how the statements are used, just as the Eleventh Circuit talks about and just like the amicus brief from the government talks about, it's when used in connection with the evidence of repayment of debt. Well, in this case, we have no debt repayment. We only had a repayment after it turned out they stole our money. And once they stole the money and used it for other things, then we had a debt. But it wasn't, we didn't have a preexisting arrangement where we knew we were going to have a repayment and their overall financial condition was important to us. I think that's where it comes in, so. Thank you, Your Honor. Thank you, sir. Thank you, Your Honor. I'll just try to keep to three brief points. To begin with, with my friend's suggestion that this would be a fraud loophole or that this would incentivize fraud, this is simply not the case. As the Court indicated, the writing requirement solves any solution here. As the Eleventh Circuit said, the statute creates a preference to put these sorts of representations in writing. There are a number of reasons why that's so. It makes the representations more accurate at the outset because it ensures that the parties have an agreement upon what representations are actually being made. It also shows what the reliance actually is because where a creditor wants to be able to turn around and say later, I relied on this information in extending debt or in providing a payment on credit, as was the case here, that you actually have a record as to what statements the creditor at that time thought it was relying upon and thought were important. If it's all done via oral statements, you have the ability to, years after the fact, sometimes, like this case, a decade or more later, to have to saddle a bankruptcy court with understanding, well, there's a debtor or there's a creditor. Obviously, there's a loss of money here. The creditor will have an incentive to remember that certain circumstances that they had a reliance interest that certainly don't accord with what the debtor recalls the circumstances of having been. As the Eleventh Circuit noted, Congress created a simple solution, which is for this kind of circumstance, put the representations in writing, and then there won't be any doubt after the fact as to what statements were made and whether or not that there was a reliance interest on those statements, and it provides much easier adjudication for the bankruptcy courts to be able to have a written record of the transaction. My second point is that the counsel, again, says that these statements are vague and questions the underlying meaning of the statements, but counsel hasn't provided any basis for how he can square that argument with the fundamental theory of this case, which was that they relied on these statements and that they're the linchpin of their fraud claim. Now, the argument that's repeated is that they didn't expect repayment of money, but they are a creditor here just the same way, because what they expected was repayment of an aircraft that was fixed. It doesn't make a difference if you're lending out money on credit and you're anticipating getting the money repaid to you, or if you're lending out money on credit and you're anticipating having a fixed aircraft returned to you. In both circumstances, the reason that you'd be asking about the financial stability of the company that you're giving out money to on credit is because you want to know that you're going to whatever you're anticipating getting returned to you at some later point is in fact going to be returned to you. As counsel stated, in this circumstance, Boyington was, quote-unquote, entrusting money to Boyington or to McKinney Aircraft, Aerospace. When it was deciding to make this decision to entrust money, to give money out on credit for aircraft parts, the very reason it wanted to know whether or not the company was financially sound or financially stable was precisely so it could determine whether there was risk in entrusting this money, that it would in fact get the aircraft parts returned to it. And so the question is, how should that have been done? I mean, how should that money have been? If you wanted to provide money to get airplane parts or whatever, how should that have been set up so this wouldn't have happened? Well, so, Your Honor, if they wanted to be able to exempt this debt from discharge and note, this is very powerful medicine, exempting from discharge. They could have asked and said, well, we would like a written statement about McKinney Aircrafts. They don't think about that. I mean, how should they? They never think about that ahead of time. Have you ever met anybody who, I mean, in the bankruptcy business, who started worrying about whether they were going to have an exemption from discharge at the beginning of the transaction? The question is, how do they set it up in such a way that they get their money back? Well, Your Honor, the — I think the — Some sort of setup. Well, the answer is they can make a bankruptcy claim like all of the other creditors of McKinney Aircraft do. The question isn't can they bring a claim in the bankruptcy action. They absolutely can bring a claim in the bankruptcy action like every other creditor. The question is, instead, can they exempt that from bankruptcy discharge? No. So how should they have set up this money so they didn't have to worry if a bankruptcy ensued? Well, they would need to get it in writing, Your Honor, at the outset. They would have to get a representation about the financial condition that they say was material to their decision in order for that to later be an exemption from bankruptcy discharge. Well, you don't — never mind. You don't get my question. That's okay. It's not important. Let's just move on. I'm sorry, Your Honor. I just — I can try. My apologies. All right. Just keep going. Well, and just the last point is there needs to be some kind of oral statement that qualifies as the court indicated. Thank you very much. Thank you, Mr. Hughes.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.